[Cite as *Estate of Mullinix v. Mullinix*, 2025-Ohio-1336.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [Estate of] Logan E. Mullinix [Deceased], | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-466 |
| v. | : | (C.P.C. No. 17DR-399) |
| Pamela R. Mullinix, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 15, 2025

**On brief:** *Marc Fagin*, for appellant. **Argued:** *Marc Fagin*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Pamela R. Mullinix, appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations holding her in contempt, ordering her to pay Logan E. Mullinix[1] $33,017.97 as an offset of monies owed as part of the divorce property distribution, $12,000.00 as attorney fees and costs for the contempt motion, and $3,000.00 as attorney fees and costs to defend against Pamela's prior Civ.R. 60(B) motion.

---

[1] Following the close of briefing but prior to oral argument, Pamela filed a memorandum suggesting that Logan had unexpectedly passed away, on March 5, 2024. We stayed the appeal and continued the scheduled oral argument to allow for the possible opening of an estate and substitution of that estate as a party, but that did not immediately occur, and oral argument was ultimately heard on September 25, 2024. Several days later, Gina Mullinix and Hal Longview, who had been appointed co-administrators of the Estate of Logan E. Mullinix, filed a motion to substitute the estate as a party to this action, which this court granted. But given that the case had already been submitted and because neither representative of the estate claimed to be a licensed attorney in this state, we did not permit additional briefing to be filed.

{¶ 2} We have reviewed this case several times. In *Mullinix v. Mullinix*, 2022-Ohio-3398 (10th Dist.) ("*Mullinix I*"), we affirmed the judgment of the Domestic Relations Court denying Pamela's Civ.R. 60(B) motion to set aside its judgment granting a divorce and division of property, overruling her four assigned errors and holding that Pamela had failed to demonstrate she was misled regarding the value of items that were awarded to Logan but that she retained following the divorce. *See id.* at ¶ 14 (holding that "Pamela's own pre-decree interrogatories [show that she] knew or had reason to suspect that the value of the 'tools and equipment' was greater than $20,000, [and so] she cannot establish that she was defrauded and is therefore not entitled to Civ.R. 60(B) relief."). In *Mullinix v. Mullinix*, 2023-Ohio-1053, (10th Dist.), *jurisdictional motion overruled*, 2023-Ohio-3670, ("*Mullinix II*"), we affirmed the trial court's decision rejecting Pamela's challenge to its jurisdiction over the divorce based on her new factual claim that Logan was not an Ohio resident for six months immediately preceding the filing of his complaint. *See id.* at ¶ 28 ("Having admitted and stipulated to facts sufficient to confer on the trial court jurisdiction over Logan's complaint for divorce, Pamela may not challenge the trial court's jurisdiction in a post-judgment collateral attack."). And in *Mullinix v. Mullinix*, 2023-Ohio-3696, (10th Dist.) (*Mullinix III*), we issued a per curiam decision allowing Pamela to reinstate the appeal that is currently before us, which she had previously voluntarily dismissed because she believed it to be from a nonfinal order. *See id.* at ¶ 9 ("[B]ecause it appears that appellant's counsel did not understand that filing a motion to dismiss his client's own appeal would be granted . . . we, in the interest of justice, grant appellant's motion for reconsideration . . . and reinstate this appeal.").

{¶ 3} We have previously described the pertinent facts of this case as follows:

> Pamela and Logan Mullinix were married in 1988 in Tennessee and have two children. Logan filed for divorce in Franklin County in 2017, and an uncontested decree of divorce, including property division, was entered on May 11, 2018. Pamela filed a motion for relief from judgment on May 13, 2019, arguing that Logan misrepresented the value of his personal property either in the decree itself or in a separate contempt action in which he alleged in a contempt motion that Pamela has refused to return to him. The divorce decree states that "[Logan] shall be entitled to recover any of his tools and musical equipment in [Pamela]'s possession." Pamela contends that prior to her approval of the agreed decree, Logan

estimated the worth of the "tools and musical equipment" at approximately $20,000.00 but now claims they have an estimated value of $121,495. She argues that if she had been aware of that higher value, she would not have agreed to the property division.

. . .

[W]hile it is true there is a disconnect between the estimated worth of the items as described in Logan's property affidavit and his subsequent claims regarding "replacement value," there is also indisputable evidence that Pamela herself estimated the value of at least a portion of that property at over $100,000 before she signed the divorce decree. . . . Because Pamela herself admitted that she was aware of the alleged cost or value of the items as in excess of $100,000 prior to entering into the uncontested divorce, she cannot now claim that she relied upon Logan's allegedly fraudulent valuation of the items at $20,000 when she accepted the divorce.

*Mullinix I* at ¶ 2, 10.

In December 2021, Pamela again asked the trial court to set aside the agreed entry, this time by filing a motion to dismiss, pursuant to Civ.R. 12(B)(1) and (3). There, for the first time, Pamela argued that the trial court lacked subject-matter jurisdiction over this action. Contrary to her admission in her answer and to the stipulation in the agreed entry, Pamela argued that Logan had not been a resident of Ohio for at least six months immediately preceding the filing of his complaint, as required by R.C. 3105.03[]. She claimed that Logan left the marital residence in New Albany at the end of August 2016, moved to Tennessee, and never returned. She also alleged that Logan obtained a Tennessee driver's license in December 2016, purportedly based on a declaration of residency in that state.

. . .

Even assuming that Logan's allegation that he had been an Ohio resident for at least six months immediately preceding the filing of his complaint was untruthful, Pamela cannot claim that she was unaware of that untruthfulness when she filed her answer, admitting to Logan's allegations regarding his residency, and authorized the agreed entry. . . . Pamela admitted to Logan's allegations that he had been an Ohio resident for more than six months immediately preceding the filing of his complaint and a Franklin County resident for more than 90 days immediately preceding the filing of his complaint.

> She also stipulated in the agreed entry to the propriety of venue in Franklin County, to the trial court's jurisdiction, and to the facts giving rise to that jurisdiction.

*Mullinix II* at ¶ 6, 26. Pamela's current appeal stems from cross-motions for contempt filed by the parties. As indicated above, the Civ.R. 60(B) motion previously reviewed by this court related to the valuation of Logan's musical instruments and equipment, which were in Pamela's possession. Logan's contempt motion largely related to Pamela's refusal or inability to return those instruments to him, and Pamela's motion for contempt against Logan largely related to her claims that he failed to make timely mortgage payments as obligated, and this resulted in penalties to her.

{¶ 4} Pamela asserts six assignments of error with the trial court's judgment. But as far as can be determined for the merit brief her counsel filed in this case, Pamela primarily seeks that this court issue a decision holding that the trial court's decision, which overruled her objections to the magistrate's decision finding her in contempt, is not a final order. Although her brief asserts other issues, those questions are secondary—if the challenged order is not final, this court lacks jurisdiction to address merits issues. Accordingly, for ease of review we have addressed Pamela's assignments of error out of order.

> **Assignment of Error No. 1:** Because the trial court failed to rule on every one of Pamela's objections its decision and judgment entry is not a final appealable order and this court lacks jurisdiction over the instant appeal.

{¶ 5} In Pamela's first assignment of error, she contends that the order from which she appeals is not a final order because it did not address all the arguments set forth in her supplemental objections. She claims that three asserted defenses to contempt set forth in her supplemental objections were not addressed: first, that Logan should be barred from asserting that she was in contempt pursuant to the "Full Disclosure of Assets" provision of the divorce decree because he did not disclose all his musical instruments in discovery; second, that Logan released any claim to his musical instruments in the language of the decree; and third, that Logan is barred from asserting Pamela's contempt by judicial estoppel.

{¶ 6} But Pamela and her counsel have misunderstood the trial court's function in ruling on objections to a magistrate's decision as well as the interplay of the objections

procedure with the statute governing review of final orders.  It goes without saying that this court's appellate jurisdiction is generally restricted to the review of final orders. *See generally* R.C. 2505.02(B) and Ohio Const., art. IV, §3(B)(2).  Moreover, we have held that a court's failure to review objections raised to a magistrate's decision renders that order nonfinal within the statute and constitutional provision, depriving us of appellate jurisdiction.  *See, e.g.*, *Clark v. Clark*, 2016-Ohio-4777, ¶ 9-12 (holding that "because the trial court failed to rule on each of appellant's objections, its decision and entry is not final and appealable, and this court lacks jurisdiction to consider it").  Pamela asserts that pursuant to *Clark*, the trial court's entry is nonfinal and therefore we lack authority to consider the merits of this appeal.

**{¶ 7}**   Nevertheless, our jurisdiction is proper here.  Civ.R. 53(D)(3)(b)(ii) provides that an "objection to a magistrate's decision shall be specific and *state with particularity all grounds* for objection."  (Emphasis added.)  It is therefore incumbent on parties filing objections to state all arguments and grounds supporting each objection. But Civ.R. 53(D)(4)(d), which governs the trial court's action on objections, provides more flexibility to the judge in the method of ruling on objections, stating only that "[i]f one or more objections to a magistrate's decision are timely filed, the court *shall rule on those objections.*  In ruling on objections, *the court shall undertake an independent review as to the objected matters* to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  (Emphasis added.)

**{¶ 8}**   Plainly, while courts are required to rule on objections and undertake an independent review as to objections, they are not required to offer detailed explanations as to every single *ground* set forth in those objections, as Pamela and her counsel seem to suggest.  Pamela wrongly argues that trial courts are required to rule on each of the grounds purportedly supporting her objections, rather the objections themselves. But merely because three of Pamela's specific arguments regarding Logan's contempt motion were not directly addressed in the trial court's 21-page decision overruling her objections does not mean those objections were not ruled upon—they most definitely were. (*See generally* Decision & Jgmt. Entry at 20-21 (overruling all eight of Pamela's objections and overruling all nine of her supplemental objections save her objection to the purge schedule, modifying and adopting magistrate's decision)).  Because the trial court engaged in "an independent

review as to the objected matters" and ruled upon all of Pamela's objections, the trial court's entry was a final order. Pamela's first assignment of error lacks merit and is overruled.

{¶ 9} All of Pamela's remaining objections take issue with the decisions of the trial court regarding the allegations of contempt of prior orders. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, (1971), paragraph two of the syllabus, quoted in *Hill v. Hill*, 2017-Ohio-2625 (10th Dist.), ¶ 20. "Contempt results when a party before a court disregards or disobeys an order or command of judicial authority." (Quotation marks deleted and citations omitted.) *Robinson v. Rummelhoff*, 2014-Ohio-1461, ¶ 32-33 (10th Dist.).

{¶ 10} Generally, contempt proceedings in domestic relations matters are civil in nature as their purpose is to encourage compliance with the court's orders. *Id.* at ¶ 32, quoting *Wehrle v. Wehrle*, 2013-Ohio-81, ¶ 54 (10th Dist.). In a civil contempt proceeding, the movant must provide clear and convincing evidence that the other party has violated an order of the court. *Hopson v. Hopson*, 2005-Ohio-6468, ¶ 19 (10th Dist.), citing *Allen v. Allen*, 2003-Ohio-954, ¶ 16 (10th Dist.). However, once the movant has met that burden, it "shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence." *Hopson* at ¶ 19, citing *Allen* and *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984). "[S]ince the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge." *Hill* at ¶ 20, quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 16 (1988). Accordingly, the determinations of a trial court in these proceedings will not be reversed absent an abuse of discretion. *See, e.g., Hopson* at ¶ 9, citing *State ex. rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981). *See also Mayle v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-2774, ¶ 15 (10th Dist.) (review of court's adoption of magistrate's decision is for abuse of discretion), and *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983) (domestic relations matters reviewed for abuse of discretion).

> **Assignment of Error No. 6:** The trial court erred by not ruling in Pamela's favor on the undecided objections.

> **Assignment of Error No. 3:** The trial court erred by adopting the magistrate's decision which determined that Logan owned 72 musical instruments during the divorce.

> **Assignment of Error No. 4:** The trial court erred to Pamela's prejudice by adopting the magistrate's decision which determined that Logan's musical instruments were worth $74,856.

{¶ 11} In Pamela's sixth assignment of error, she contends that the trial court erred by not ruling in her favor regarding the three arguments raised by her first assignment—that the "Full Disclosure of Assets" provision of the divorce decree barred the contempt finding because Logan did not disclose his musical instruments prior to the adoption of the decree; second, that Logan released his claim to those instruments in the decree; and third, that Logan is barred from recovering the value of those instruments by the doctrine of judicial estoppel. In Pamela's third and fourth assignments of error, she challenges the trial court's decisions as to the number and value of those musical instruments that she failed to return to Logan after signing the divorce decree.

{¶ 12} Given that all three assignments of error address similar matters and are reviewed for an abuse of the trial court's discretion, we address them together. And we must begin by observing that several of the contentions made in these assignments of error are barred by the law-of-the-case doctrine. The doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." (Internal quotation marks deleted.) *Fernando v. Fernando*, 2020-Ohio-7008, ¶ 22 (10th Dist.), quoting *Klaus v. Klosterman*, 2016-Ohio-8349, ¶ 14 (10th Dist.). This court has already held that Pamela forfeited arguments regarding the ownership, possession, and replacement value of Logan's musical instruments and equipment by failing to raise them prior to signing the divorce decree. As we held in *Mullinix I*:

> [W]hile it is true that there is a disconnect between the estimated worth of the items as described in Logan's property affidavit and his subsequent claims regarding 'replacement value,' there is also indisputable evidence that Pamela herself estimated the value of at least a portion of that property of at over $100,000 before she signed the divorce decree. . . . Because Pamela herself admitted that she was aware of the alleged cost or value of the items as in excess of $100,000 prior

> to entered into the uncontested divorce, she cannot now claim that she relied upon Logan's allegedly fraudulent valuation of the items at $20,000 when she accepted the divorce.

*Mullinix I* at ¶ 10.

{¶ 13} Furthermore, at the contempt hearing "Logan testified that Pamela was in possession of all of the items at the time of the Divorce, which at that time believed [sic] were valued at approximately $200,000." (Decision & Jgmt. Entry at 7, citing Tr. at 162). Moreover, the trial court observed that Logan had testified that the value "for the unreceived music items totaled $74,856.00," that the amount was "properly identified by Logan through his testimony," and that in her testimony, Pamela acknowledged "discussions that the money spent on musical equipment purchased over the last 9 years of the marriage was in excess of $100,000." *Id.* at 7-8, citing Tr. at 183, 242.

{¶ 14} On review of these arguments and the record, we conclude that the trial court did not abuse its discretion in concluding that there was "sufficient Evidence in the Record, including Logan's offered Exhibits, and listing prices in accessing [sic] the value of his unreceived musical equipment." *Id.* at 8-9. Because the trial court's resolution of the questions regarding number and valuation of the remaining musical instruments and equipment are amply supported in the record, and because the issues of Logan's ownership and right to recovery of those instruments were resolved in *Mullinix I*, we conclude that Pamela's sixth, third, and fourth assignments of error lack merit. Those three assignments of error are accordingly overruled.

> **Assignment of Error No. 2:** The trial court errored [sic] to Pamela's prejudice by finding her in contempt of court for not allowing Logan an opportunity to inspect her house when the undisputed evidence showed that the parties agreed on three occasions for Logan to have access but he cancelled each time and on a fourth occasion Logan refused Pamela's offer of access without a valid reason.

{¶ 15} In her second assignment of error, Pamela argues that the trial court failed to properly evaluate the credibility of Pamela's testimony regarding Logan's ability to inspect the residence. Logan testified that although he had to reschedule a few trips to Columbus to inspect the marital residence for personal property for health reasons, his attempts to search the residence and pick up his items were repeatedly thwarted by Pamela. As the trial court observed:

Logan testified that he tried to get his items numerous times. In the Summer of 2019 Logan, his son Hal, and a friend traveled from Tennessee to Ohio to pick up items. Pamela would not answer the door, and Logan stated he was not allowed in the house. Pamela stated that she put items out on the curb in August of 2019. Logan continued to believe that the unretrieved belongings were in Pamela's possession at the time of Trial. During this trip, Logan was able to take pictures of items through an open window in the basement. Neither he nor his son were allowed inside the home and could only pick up items in the driveway that were set out by Pamela. The Magistrate asked the Parties to clarify what items were returned in comparing Plaintiff's Exhibits 2 and 3. Logan identified several musical items that were in a picture of the New Albany, Ohio basement. Pamela stated that those items were put out on the driveway, and Logan testified that he absolutely did not receive those items.

The Parties also had other real estate property which Pamela also never allowed Logan access inside. Logan was only allowed to go into the garage which he claims was one out of a total of four or five of the buildings. The garage that Logan was allowed to enter was "cleaned out", and nothing was there.

(Internal transcript citations omitted.) (Decision & Jgmt. Entry at 16.) In general, Logan testified that Pamela retained possession and/or control of all of his enumerated musical equipment. (Tr. at 175.) Pamela, by contrast, testified that she had allowed Logan access to the residence "many times," *id.* at 224, she denied retaining any musical instruments or significant musical equipment, *id.* at 251-252 and argued that Logan had already taken possession of most of the items he claimed she held. The trial court, on review of the transcript, agreed with the magistrate's conclusion that Pamela's testimony on these points was not credible:

Pamela's position on not allowing Logan to inspect items or have access to the residence is untenable. She attempted to schedule days for Logan to pick up his items, which those offered days had to be rescheduled, and she ultimately refused him access to the properties to pick up and inspect the items. Pamela now testifies and concludes that Logan took all the items in Trailer loads (around the time he left the residence before the *Decree*). The Parties' son, Hal, acknowledged seeing the items in the family home before he left, but has not seen them at his father's house since. Logan was able to identify some of the items by looking through the window of the

> basement in 2019. Pamela has attempted to avoid enforcement of the Parties' provisions within the *Decree* through several methods of litigation. She has since then attempted to Vacate the Decree through a *Civil Rule 60(B) Motion* (denied, appealed, affirmed), and then filed a *Motion for Summary Judgment* to order the Decree Void (denied, appealed, affirmed). The Court finds that Logan was denied access into the Tumblebrook residence as he was not allowed the opportunity to inspect the property and personal belongings therein.

(Emphasis in original.) (Decision & Jgmt. Entry at 17.) (*See also* Mag.'s Decision at 4-8.) While the trial court correctly observed the magistrate was in the best position to evaluate Pamela's testimony, decision and judgment entry at 17, it independently reviewed the record and adopted the magistrate's conclusion regarding Pamela's credibility, *id.*, and further observed that it could not find that Logan's testimony on this issue lacked credibility. *Id.* Accordingly, we conclude that the trial court's credibility determinations regarding this issue were within its discretion, and overrule Pamela's second assignment of error.

> **Assignment of Error No. 5:** The trial court erred to Pamela's prejudice by adopting the magistrate's decision which failed to proerly [sic] calculate her damages caused by Logan's failure to make monthly mortgage payments.

{¶ 16} Pamela's fifth assignment of error challenges the trial court's determinations regarding the mortgage payments for the marital residence. It is apparent that the trial court thoroughly reviewed the transcript evidence presented regarding this issue, (*see* decision and judgment entry at 18-20), and on that basis correctly concluded that "based on the evidence presented, the Mortgage account balance before responsibility shifted from Logan to Pamela (i.e., September 2, 2019) was $4,782.26 (amount to cure Default) plus $4,089.13 (required Escrow balance)." *Id.* at 20. Based on those figures, "the Court does not find that the Magistrate committed an error in finding that Pamela was awarded the sum of these numbers or $8,871.39." *Id.* Pamela argues these figures stem from an "incorrect application of the evidence," (Brief of Appellant at 50), but her argument presumes both that she made payments to the mortgage account balance to cure the default and that the escrow amount was inaccurate, and she points to no competent, credible record evidence beyond her assertions to support those presumptions. Our own review

demonstrates that the trial court's determination regarding the issue raised by Pamela's fifth assignment of error was within its discretion and was not erroneous.

{¶ 17} In sum and for all the foregoing reasons, we overrule all six of Pamela's assigned errors and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.